UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,            No. 06-13346

    Plaintiff,           District Judge Arthur J. Tarnow

v.           Magistrate Judge R. Steven Whalen

UNITED STATES CUSTOMS AND
BORDER PROTECTION,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court are briefs by Plaintiff Ford Motor Company [Dock. #70, 96] and Defendant United States Customs and Border Protection ("Customs") [Dock. #88, 97] and various other submissions by both parties for determination of whether Customs complied with the District Court's November 12, 2008 order regarding the Vaughn indices and electronic searches [Dock. #53]. For the reasons set forth below, I find as follows:

> 1). Customs has complied with the terms of the November 12, 2008 order with the exception of the deficiencies discussed in Arguments IV.D and IV.G.[1]
> 2). Plaintiff has not overcome the presumption that Defendant has acted in good faith.
> 3). Defendant shall provide the information discussed in Arguments IV.D and IV.G. within 14 days of this order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the present action on July 25, 2006 for declaratory and injunctive relief under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") against Defendant, an agency of the

---

[1] Included in Defendant's latest brief is also a request that its December 16, 2009 renewed motion for summary judgment [Dock. #82] be reinstated and granted. *Dock. #97.* The renewed motion was administratively terminated by the District Court on July 30, 2010 and as such, cannot be considered by the undersigned, but may be taken up before the District Court.

United States Department of Homeland Security. The case's tangled history is summarized as follows.

### A. Events Predating the Present Action

On October 6, 2005, Plaintiff made FOIA requests to the Office of the Commissioner of Customs in Washington, D.C., the Office of Chief Counsel at Customs in Washington, D.C. and the Customs Regulatory Audit Division ("RAD") in Fort Mitchell, Kentucky. *Complaint* at ¶40. The request consisted of the "any documents from February, 2002 to the present that relate in any way to the review of Ford's application to join the Importer Self-Assessment ("ISA") Program" and "all documents from January, 2001 to the present that in any way relate to an assessment of or otherwise comment on the nature of quality of Ford's relationship with Customs and Border Protection ("CBP") or Ford's compliance with Customs laws and/or regulations." *Id.* The same day, Plaintiff made an identical request to Customs RAD in Washington, D.C., but included an additional request for "any documents relating in any way to CBP's classification of Ford as a 'low-risk importer' during its 1997-2000 Customs Assessment Team ("CAT") Audit" as well as documents related to CBP's policies concerning the designation of "low risk" importers and letters to communications to importers designated as "low-risk." *Id.* at ¶41.

### B. The Present Action

On July 25, 2006, Plaintiff filed the present action for declaratory and injunctive relief.

#### 1. Magistrate Judge Pepe's Report and Recommendation

Defendant filed a motion for summary judgment on January 31, 2008 [Dock. #38]. The motion was referred to Magistrate Judge Steven D. Pepe. On August 1, 2008, the Magistrate Judge filed a 46-page Report and Recommendation, recommending that the motion be granted in part and denied in part. *Docket #41*. Specifically, the Magistrate Judge found that Plaintiff had "failed to

provide 'concrete evidence of bad faith,'" recommending that Defendant "be granted summary judgment as to the adequacy of its search" *Id.* at 23. The Magistrate Judge directed Defendant "to provide a more detailed Vaughn ind[ices] and/or declarations. . ." but denied Plaintiff's request for discovery. *Id.* at 43.

### 2. The District Court's Ruling on the R &R

On November 11, 2008, the District Court adopted the Recommendation in part, agreeing with the Magistrate Judge's finding regarding the Vaughn index. *Dock. #53* at 1. The two-page ruling stated that Defendant's document search had been adequate, "except for its search for documents by electronic means," directing Defendant as follows:

> "[D]escribe the criteria used for the electronic searches in every office where those searches took place. Second, the agency should employ more flexible search criteria. For instance, it is inadequate to simply search for the entire string, "Ford Motor Company," in only the header fields (To, From, and Subject)."

*Id.*

In response to the order, on January 30, 2009, Defendant filed a brief with attached exhibits, stating that it had complied the order to provide more detailed Vaughn indices and "where necessary," new [electronic document] searches using more flexible search criteria. *Dock. #60* at 2. Defendant supplemented its response on March 20, 2009. *Dock. #65*. In a July 1, 2009 submission, Plaintiff disputed the adequacy of the amended Vaughn index and electronic searches, requesting that "the release of all withheld documents based on a waiver of privilege . . ." *Dock. #70* at 31.

### 3. Magistrate Judge Scheer's Involvement

On August 17, 2009, the case was referred to Magistrate Judge Donald A. Scheer for determination of Plaintiff's July 1, 2009 brief [Dock. #70]. *Dock. #74.* On September 29, 2009,

-3-

Defendant was ordered to respond to the arguments contained in the July 1, 2009 brief. *Docket #76.* On December 16, 2009 (before responding to the July 1, 2009 brief) Defendant filed a renewed motion for summary judgment on *Dock. #82.* On December 31, 2009, Plaintiff filed both a response to the renewed summary judgment motion and separate motion to strike same motion. *Dock. #83, 84.* On February 10, 2010, Magistrate Judge Scheer granted Plaintiff's motion to strike in part, holding the renewed summary judgment motion in abeyance, pending Defendant's response to Plaintiff's July 1, 2009 brief [Dock. #70]. *Docket #87.* Defendant's filed its response to Docket #70 on February 17, 2010. *Dock. #88.* On July 30, 2010, the renewed motion was administratively terminated. *See* fn. 1, *supra*.

### 4. The Order of Reference to the Undersigned

On August 18, 2010, this case was referred to the undersigned to conduct all pretrial proceedings, "including a determination to see if there has been full compliance" with the District Court's November 12, 2008 order [Docket #53]. *Docket #92.* A status conference was held on October 12, 2010, at which time I determined that yet additional briefing would be permitted to address the issue of the Defendant's compliance with the District Court's order. Plaintiff filed a supplemental brief on October 26, 2010. *Dock. #96.* Defendant's brief was filed on November 8, 2010. *Dock. #97.*

## APPLICABLE LAW

Under the FOIA, "every federal agency shall promptly make available upon request records reasonably described." *Rugiero v. U.S. Dept. of Justice,* 257 F.3d 534, 543 (6th Cir. 2001); 5 U.S.C. § 552(a)(3)(A). "[A]n agency may not withhold or limit the availability of any record, unless one of the FOIA's specific exceptions applies. *Id.* ; § 522(d). These exceptions, narrowly construed, place the burden "on the agency to justify its action." *Id.*; § 552(a)(4)(B).

"[D]istrict courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery," as a result of which, "a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA. . . ." *Rugiero* at 544 ( citing *Jones v. FBI,* 41 F.3d 238, 242 (6th Cir.1994)). While the Act "authorizes courts to examine documents *in camera* when reviewing the propriety of an agency's withholdings," the Sixth Circuit "encourages use of [such] review sparingly, when no other procedure allows review of the agency's response to a FOIA request." *Id.* at 543-544 (citing *Ingle v. Department of Justice,* 698 F.2d 259, 267 (6th Cir.1983)); § 552(a)(4)(B).

A "Vaughn index" is a means by which "the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail," allowing the court to assess the agency's "claims for exemptions from disclosure under the Act." *Id.* at 544 (citing *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973)). A Vaughn index "is generally sufficient to allow a court to decide whether a government's refusal to divulge information is justified." *Bell v. F.B.I.,* 1993 WL 415308, *1 (6th Cir. 1993)(citing *Osborn v. IRS,* 754 F.2d 195, 196 (6th Cir.1985)). "[T]he agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith." *Rugiero,* at 544 (citing *Jones,* 41 F.3d at 242). The presumption can be overcome by "[e]vidence of bad faith on the part of the agency" concerning either "underlying activities that generated the FOIA" or "the agency's conduct in the FOIA action" *Id.* (citing *Jones,* at 242-43). However, "even an inadequate search does not necessarily imply bad faith." *Id.* at 545.

## ANALYSIS

Again, the issue before this Court is whether Defendant complied with the District Court's November 12, 2008 order to supplement the information found in the Vaughn index and use "more

-5-

flexible search criteria" in making electronic searches. *Docket #53*. Plaintiff would have this Court find that Defendant's inadequate responses to the FOIA requests justifies reconsideration of the adopted portions of Magistrate Judge Pepe's Report and the District Court's order. These arguments, based on the premise that Defendant acted in bad faith (although Judge Pepe found the absence of bad faith) go far afield of the parameters of the order and are not well taken.

### A. Arguments Contained in Plaintiff's July 1, 2009 Brief [Docket #70] and Defendant's February 17, 2010 Responses [Docket #88].

For ease of reference in discussing docket numbers 70 and 88, the Court dispenses with its customary subheading use and adopts the numerical and alphabetical scheme used by both parties.

**Argument I. Inconsistent Declarations**

**C-D**. Plaintiff asserts that a supplemental affidavit provided by Defendant on January 30, 2009 reveals for the first time that a decision not to admit Ford into the Importer Self Assessment Program ("ISA") was made during the time period in which penalty cases against Ford were pending. Plaintiff contends that the new declaration stands at odds with Defendant's former position that a decision was not final. *Dock. #70* at 2-4, Exhibit X, Declaration of Joseph Rees at ¶13.

In response, Defendant disputes that the January 30, 2009 affidavit contradicts its earlier declarations/arguments that a "final decision" had not been made on application. *Docket #88* at 9. Instead, Defendant argues that the latter affidavit is consistent with its earlier position that while "Ford was not precluded from admission to the ISA program, [it] would not be considered until its pending penalty cases were resolved." Defendant points out the because the ultimate decision to exclude Ford from the ISA had not been made, "many of the records" were properly held under the deliberative process privilege. Defendant contends that the additional facts provided in the recent affidavit (showing "an internal dispute") were included to support its privilege claim.

-6-

Plaintiff had failed to show a material inconsistency between Defendant's earlier submitted affidavits and the January, 2009 declaration, or that Defendant otherwise acted in bad faith in this matter. As discussed in more detail below, I also reject Plaintiff's overlapping argument that Rees' later declaration regarding the scope of his electronic documents search for responsive documents contradicts his earlier statements.

Plaintiff's argument that "Customs has been chastised in other cases on similar grounds," is not a factor in the present determination. *Dock. #70* at 4. To be sure, in this case, the District Court found deficiencies in the Vaughn index and electronic searches. However, neither Magistrate Judge Pepe nor the District Court found that Defendant had acted in bad faith. Plaintiff's "chastised in other cases on similar grounds" argument does not establish that Defendant (now faced with a District Court's order to supplement its responses) has been deliberately non-compliant with the Court's order.

**Arguments II-III.  Electronic Searches**

**A.  Post-Order Searches**

Plaintiff argues that contrary to the District Court's order, no new data bases were searched following the November, 2008 order. *Dock. #70* at 6-7. In response, Defendant notes that the order did not "require electronic searches of offices or data bases beyond those already searched," rather that where applicable, it was to "describe the search criteria used in each of the electronic searches already conducted," and/or conduct a new search of already searched fields "using more flexible criteria." *Dock. #88* at 12 (citing *Dock. #53*). Defendant notes that its new searches of previously searched databases included the term "Ford" rather than the term "Ford Motor Company" as discussed in the November, 2008 order. *Dock. #88* at 15.

The District Court's order did not require the search of *additional* databases. Defendant's brief devotes eight pages to new electronic searches conducted in compliance with the Court's order. Plaintiff's implied argument that no further searches were performed or that Defendant otherwise attempted to skirt the November, 2008 order is without merit.

### B. Interpretation of the Court Order

Plaintiff also argues that Defendant impermissibly narrowed the Court's order to conduct new electronic searches "where necessary," contending that the order required all of the electronic searches to be redone. *Dock. #70* at 7-8. In response, Defendant notes that the order indicates that electronic searches needed to be redone in instances where the search terms were impermissibly restrictive, *i.e.* "Ford Motor Company" rather than a redo of all electronic searches. *Dock. #88* at 20.

I agree with Defendant's contention that the order to use broader search terms pertained only to databases where impermissibly narrow terms had been previously used, rather than a whole scale second search of all electronic databases.

### C. Electronic Search Terms

Plaintiff also argues that Defendant failed to use broader search terms as ordered by the District Court. *Dock. #70* at 8. In response, Defendant states that it conducted post-order searches using the search terms "ford" and ISA. *Dock. #88* at 20-21.

Electronic searches using the terms "ford" and ISA, as described more fully in Defendant's Brief and the accompanying declarations, are consistent with the District Court's order. Likewise, Plaintiff's miscellaneous allegations of electronic search deficiencies by Defendant (Section III) have been satisfactorily refuted by Defendant. *See Dock. #70* at 10-11, *Dock. #88* at 12-20.

### D. Bad Faith

Plaintiff argues that over the course of eight productions, Defendant "has also produced a

-8-

large number of documents that were originally withheld for various reasons." *Docket #70* at 10. Plaintiff contends that such inconsistency "shows the Government's disregard for the FOIA process and that the Government only attempts to perform a perfunctory review of documents when ordered by the Court." *Id.* In response, Defendant, citing Magistrate Judge Pepe's Report and Recommendation, attributes any inconsistencies in its production to Plaintiff's overbroad requests. *Docket #88* at 22. Defendant notes further that "FOIA does not require a perfect, exhaustive search, but merely a reasonable one." *Id.* at 23 (citing *Dock. #41* at 15-16). Finally, Defendant denies that the release of previously withheld information implies "bad faith."

Plaintiff has not shown that the FOIA searches were unreasonable. As to "bad faith," Magistrate Judge Pepe's findings, citing *Meeropol v. Meese, i790 F.2d 942, 953* (D.C. Cir. 1986) are applicable here:

> "Customs' decision to release additional documents . . . does not by itself call into question the adequacy of Customs' declarations or justify the need for discovery. 'An agency's disclosure of documents that it has previously withheld does not render its declarations suspect.'"

*Dock. #41* at 25 (citing *Meeropol v. Meese,* 790 F.2d 942, 953 (D.C. Cir. 1986). Further, the District Court, adopting this finding, noted that Defendant's search had been "mostly adequate." *Dock. #53* at 1. Plaintiff has not shown that Defendant's subsequent searches were unreasonable, much less in bad faith.

### Argument IV. The Vaughn Indices

Plaintiff argues generally that Defendant failed to comply with the Court's order to provide more detailed Vaughn index entries. *Dock. #70* at 12.

#### A. Compliance with the Court Order

Specifically, Plaintiff argues that non-privileged matter, such as decisional and post-

decisional matters pertaining Ford's denial into the ISA program continues to be improperly withheld. *Id.* Plaintiff contends that it is implausible that the decision to deny Ford entry into the program was made without the creation of even one document. *Id.* at 13. Plaintiff argues further that Defendant has failed to provide dates for some of the withheld documents, the names or positions of the individuals involved, or sufficient detail for the Court to determine whether the claim of privilege is appropriate. *Id.* at 13-14. Plaintiff provides an example of what it deems an inadequately detailed description of withheld material, contending that it does not provide sufficient information to establish privilege. *Id.* at 16, *Exhibit A* (OCC 001). "Finally, Plaintiff contends that Defendant has failed to provide a segregability analysis as required by Magistrate Judge Pepe's Report and Recommendation." *Id.* at 16-17 (citing *Dock. #28-29*).

In response, Defendant disputes Plaintiff's objection to the non-submission of the date and substance of the ISA denial decision at issue, stating that it "has not refused to disclose the date of decision; rather, it does not know exactly when the decision was made and has not found any record of the decision being committed to writing." *Dock. #88* at 26-27, *Exhibit 40* at ¶7. Defendant also disputes that Plaintiff's contention that no documents regarding Ford's application were produced or identified, citing multiple references to responsive documents. *Id.* at 27 (citing *Dock. #60, Exhibit 18*).

As to Plaintiff's complaint that a number of the referenced documents were undated, Defendant points out that "it is not possible to provide a date if the document is undated," arguing that said documents were nonetheless properly withheld under the deliberative process privilege because "the predecisional nature of the document" could be discerned from the Vaughn description. *Id.* Defendant also disputes the argument that it was required to "identify every person involved with each document in the Vaughn index," noting that Magistrate Judge Pepe permitted the use of

-10-

initials rather than disclosure of the individuals' names. *Id.* at 28 (citing *Dock. #41* at 40-41). Defendant notes that under the FOIA, "the names of particular individuals are exempt from disclosure in the interest of privacy, unless the requester demonstrates that the public has an overriding interest in disclosure." *Id.* at 29 (citing *U.S. Department of State v. Washington Post Co.,* 456 U.S. 595, 599-602 (1982)). In response to Plaintiff's claim that the Vaughn index descriptions were inadequately detailed, Defendant points out that the disputed description cited by Plaintiff, *see Docket #70,* Exhibit A, (OCC) 001, was actually released to Ford "with only the names of Customs employees and third parties redacted."

Finally, Defendant argues that contrary to Plaintiff's view, it has properly "provided a segregability analysis where required," noting that it was not obliged to apply a segregability analysis to documents released with redactions. *Id.* at 31. Defendant argues further that an analysis was not required where both the deliberative and factual aspects of the material were withheld on the basis of attorney work-product privilege. Defendant reiterates that "[w]here a document has been withheld in full and the attorney work-product privilege has not been applied, a segregability analysis has been provided." *Id.*

Plaintiff's blanket assertion that it did not receive any decisional and post-decisional material pertaining to Ford's denial into the ISA program is without merit. *See Dock. #60, Exhibit 18*. Further, although as discussed below, the descriptions should contain a time frame for the creation of these documents, I agree with Defendant's contention that it was not obliged to provide a date certain for documents where the exact date was unknown or unavailable. Plaintiff's example of what it believes is an insufficiently detailed Vaughn entry, *see Dock. #70, Exhibit A* (OCC 001), standing alone, establishes the nature of the document and the reason it was withheld. Further, because as Defendant points out, this particular document was released, albeit with redactions,

Plaintiff's objection is inapplicable. Finally, I agree with Defendant's contention that it was not required to provide a segregability analysis as to documents that were wholly protected by deliberative and/or fact privilege. *See Judicial Watch Inc. v. U.S. Dep't of Justice,* 432 F.3d 366, 371-372 (D.C.Cir.2005).

### B. Missing Documents

Plaintiff argues generally that Defendant has withheld documents that ought to have been released per Magistrate Judge Pepe's Report. *Dock. #70* at 17. Plaintiff asserts that Defendant will deny that certain documents exist, then "on the inevitable next round of production . . . provides those very documents." *Id.*

Plaintiff revisits its earlier argument that Defendant's decision and post-decisional documents are absent from the production, despite the fact that Defendant has acknowledged that a committee from the Commissioner of Customs Office made the decision to deny Ford ISA entry. *Id.* Plaintiff also faults Defendant for releasing only certain pages of a "Importer Risk Designation Handbook," a document which identifies a "Low-Risk Importer Work Group." This Work Group at one time assessed the eligibility of certain importers for consideration and then passed on its recommendations to the Trade Compliance Board of Directors, which made the final decision whether "to approve or deny low-risk status." *Id.* at 18. Plaintiff notes that the Vaughn index does not reference documents created by the "Low Risk Work Group" or the "Trade Compliance Board of Directors." *Id.* Plaintiff also notes that four redacted pages from a handbook are not included in a Vaughn index. *Id.* Plaintiff points out further that while numerous individual were listed as being involved in the decision to deny low-risk status, the documents related to these individuals are absent from Vaughn indices. *Id.* at 20-21. Finally, Plaintiff argues that no C-TPAT documents were produced, despite the fact that Ford was a participant in the program. *Id.* at 21.

As discussed above, Plaintiff's contention that it did not receive any decisional and post-decisional decisions pertaining its denial into the ISA program is meritless. *See Dock. #60, Exhibit 18*. Further, I accept Defendant's contention that the Importer Risk Designation Handbook originated in the Office of Field Operations, "an office to which Ford did not send a FOIA request." *Dock. #88* at 32. While Plaintiff hyperbolically ascribes "smoking gun" significance to the handbook and description of the decisional process, it is not responsive to Ford's request for "internal agency communications assessing or commenting on the nature or quality of Ford's relationship with Customs. . . ." *Id.* The fact that portions of the Handbook were eventually released in April, 2010, as discussed below, does not establish that Defendant willfully withheld responsive documents or otherwise acted in bad faith. Moreover, Rees' declaration states that the groups "Low-Risk Importer Group" and "Trade Compliance Board of Director" have not been in use since December, 2003. *Id.* at 33; Exhibit 40 at ¶8. Plaintiff's contention that numerous individuals involved in the "low-risk" decision-making did not produce responsive documents is belied by the fact that they are each identified in at least one Vaughn index entry. *Id.*; fn. 16. Finally, while Ford has pointed out that no C-TPAT documents were produced, the District Court's order did not require the disclosure of these documents.

### C. The Deliberative Process Privilege

Plaintiff cites Magistrate Judge Pepe's finding that Defendant applied the deliberative privilege to a number of documents without stating "to what decision it is related." *Dock. #70* at 71-72 (citing *Dock. #41* at 31). Plaintiff also complains that Defendant continues to improperly withhold documents that reflect the final decision to deny Ford entry into the program and/or post decisional documents. *Id.* at 22-23. In response, Defendant points out that 1). Plaintiff has not made these objections with any specificity 2). pre-decisional deliberative documents were permissibly

withheld 3). pre-decisional documents "substantially similar" to the final decision were released. *Dock. #88* at 33-34 (citing ORR 50-55). They again deny that post-decisional documents are being withheld.

Because Plaintiff made only generalized objections but has not objected to the withholding of *specific* documents, these objections are deemed waived. Plaintiff's argument that post-decisional documents are being withheld, as already discussed, is rejected.

### D. Attorney Client and Work Product Privileges

Plaintiff argues that Defendant ignored Magistrate Judge Pepe's finding, adopted by the District Court, that documents withheld under the attorney client /work product privileges did not provide the role or identity of the individuals (using initials or other "unique identifiers") covered by the privilege. *Dock. #70* at 23-25 (citing *Dock. #41* at 32-35). In response, Defendant argues only that Plaintiff "[did] not point to any particular Vaughn entry" to support its position. *Dock. #88* at 34.

Contrary to Defendant's contention, Plaintiff has sufficiently particularized this objection by noting as follows:

> [O]nly about half of the OCC entries on Vaughn Index B include any initials, and only three documents on Index A include initials. . . . As for the ORR Vaughn Incices, one third of the Index A entries do not include any initials, and about half of the Index B entries do not include any initials.

Plaintiff has sufficiently preserved this objection. Consistent with the District Court's order, Defendant must either update the above indices consistent with Magistrate Judge Pepe's Recommendation or provide reasons that it is unable to do so.

### E-F. Attorneys Acting in a "Business or Managerial" Capacity

Here, Plaintiff argues that Defendant improperly designated certain documents as attorney client privileged while in fact, this material refers to OCC attorneys acting in a business or managerial capacity. *Dock. #70* at 25-27. On a related note, Plaintiff contends that "the dollar amount of [contemplated] penalties" against Ford also reflect attorneys acting in a business capacity. *Id.* at 27-28.

In response, Defendant acknowledges that the disputed material may not be wholly protected by the attorney client privilege, but contends that the records are work product protected. *Dock. #88* at 34-36. Defendant states that "the record in this case shows that existing litigation, including several penalty actions against Ford, was the subject of numerous records and that some of those records include discussions regarding Ford's ISA application." *Id.* at 34. Defendant argues further that litigation with Ford was the impetus behind the creation of these documents:

> [T]he documents in question were prepared *because of* existing or anticipated litigation with Ford. The attorneys' opinions were sought and provided *because of* Ford's penalty actions, including efforts to settle those cases.

*Id.* at 36 (emphasis in original).

Defendant has made an adequate showing that the disputed documents were appropriately withheld on the basis of the attorney client and work product privilege.

### G. Dates of Documents

Plaintiff, again noting that certain documents were not dated, states that obtaining dates is "a crucial factor in determining whether the documents were post-litigation and thus *not* attorney work product." *Dock. 70* at 28. While earlier I noted the difficulty in "dating" undated documents, I also note that Defendant has acknowledged that it has deduced, at a minimum, a general time frame for a number of these documents. *See Dock. #88* at 27 (citing *Dock. #60, Exhibit 18*). For

example, if Defendant can infer that certain documents were predecisional and thus privileged, it would also imply that it was created before and after certain dates, *i.e.*, February 1, 2002 to April, 2002, *etc.*

While Defendant cannot supply a precise date for this material, it will be required to provide as narrow a time frame as possible for the undated material.

### H.  Phantom Documents

Plaintiff claims that "31 pages of partially redacted documents" have not been listed on any Vaughn index. *Dock. #70* at 28. Plaintiff argues that this is just one more example of Defendant's "non-compliant, sloppy and haphazard response" to the FOIA request. *Id.* In response, Defendant argues that the 31 pages in dispute were  1).  erroneously overlooked by Plaintiff and 2).  later released. *Dock. #88* at 37.

Defendant has adequately shown that the missing documents were listed elsewhere or released.  Plaintiff's request for "remedies" for Defendant's "non-compliance" such as the waiver of privilege and a renewed search are denied. While the Vaughn indices, as discussed above, should be amended to reflect the above findings, Plaintiff has not provided a reason to deviate from the District Court's finding that the searches have been "mostly adequate" or that my finding of minor omissions from the Vaughn indices constituted "bad faith." *Dock. #53* at 1.

### B.  Arguments Contained in Plaintiff's Supplemental Brief [Dock. #96] and Defendant's Response [Dock. #97].

Plaintiff's October, 2010 supplemental brief revolves around the above-discussed "Importer Risk Designation Handbook."  *See* Docket #70 at pg. 18 (argument IV.B).  Plaintiff contends that Defendant only recently released a previously undisclosed page in the Handbook which describes

the process of how importers were designated as low risk. *Dock. #3* at 3, Exhibit 1. Plaintiff argues that the April 28, 2010 disclosure "reveals offices or groups within Customs that do not appear to have been included in . . . prior searches." *Id.* Plaintiff argues that a number of offices referenced in the handbook were not searched, asserting that Defendant "knew exactly where to search and refused to do so." *Id.* at 5. Plaintiff asserts further that Defendant "hid the ball" by placing arbitrary time limitations on the FOIA requests in deciding that the handbook was not responsive to the requests. *Id.* at 5-9. Plaintiff also revisits its claim that the Vaughn indices were generally inadequate. Ford asks the Court to reconsider Magistrate Judge Pepe's Recommendation, asserting that Defendant's willful withholding of critical material invalidates the previous "no bad faith" finding. *Id.* at 3 (citing Fed. R. Civ. P. 59(e)).

In response, Defendant concedes that it previously released the first page of the third chapter of the Handbook rather than the last page of the second. *Dock. #97* at 3. However, Defendant contends that the "new" information is not new at all, noting that the recently released information is also contained in the unredacted portions of Attachment A of the Handbook, released to Ford on June 12, 2007. *Id.* at 2. Specifically, Defendant points out that the previously released attachment also describes the process by which importers were designated "low risk." *Id.* at 3. In addition, Defendant denies that it placed arbitrary time restrictions on its search, noting that neither Magistrate Judge Pepe nor the District Court found this aspect of the earlier searches inadequate. *Id.* at 5. With respect to the argument that the Vaughn indices inadequately named the source of the records, this was implicitly rejected by the District Court's adoption of Magistrate Judge Pepe's findings on this point. *Id.* at 6 (citing *Dock. # 44* at 20, *Dock. #53* at 1).

## **CONCLUSION**

For these reasons, I find as follows:

1). Customs has complied with the terms of the November 12, 2008 order with the exception of the deficiencies discussed in Arguments IV.D and IV.G.

2). Plaintiff has not overcome the presumption that Defendant has acted in good faith.

3). Defendant shall provide the information discussed in Arguments IV.D and IV.G. within 14 days of this order.

SO ORDERED.

             s/R. Steven Whalen
             R. STEVEN WHALEN
             UNITED STATES MAGISTRATE JUDGE

Date: September 12, 2011

_____

## **CERTIFICATE OF SERVICE**

I hereby certify on September 12, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 12, 2011: **None.**

             s/Michael E. Lang
             Deputy Clerk to
             Magistrate Judge R. Steven Whalen
             (313) 234-5217